## Adoption of Baby Girl M.

*Martin J. Meyer,* for petitioner.
*Jerome L. Cohen,* for respondent.

LOPATTO, P. J., April 3, 1967.—Baby Girl M. was born November 10, 1966, at the General Hospital, Wilkes-Barre, Luzerne County, Pa. The natural mother of said child is C. M., who is unmarried. Thereafter, C. M. executed the following instrument:

"AGREEMENT

"I, C. M., age 29 years, of the County of Luzerne and State of Pennsylvania, hereby state that I am the mother of a baby girl born on November 10, 1966; and I hereby consent to the proposed adoption of said baby.

"I understand that a subsequent petition for adoption will be filed at the Orphans' Court of Luzerne County; and I hereby consent and agree to said adoption; and I further agree that the custody of the baby girl born on November 10, 1966 be given to Attorney . . . or his assigns.

"I hereby voluntarily execute this agreement without the disclosure of the name or other identification of the proposed adopting parent or parents.

"(sd)  C. M.

"Dated: November 14, 1966
"Witnesses: (Doctor)"

Although the foregoing instrument bears the date of November 14, 1966, the record indicates that same was executed on November 17, 1966, at the Wilkes-Barre General Hospital.

On November 17, 1966, Baby Girl M. was delivered into the custody of . . . a member of the Luzerne County Bar. On that same date, (attorney) caused possession, custody and control of said child to be delivered to Mr. and Mrs. (adoptive petitioners), Luzerne County, Pa.

On November 22, 1966, adoptive petitioners filed with this court a "Report by Person(s) Receiving Possession, etc., of Child" whereby they made known their desire and intent to petition for such child's adoption, in compliance with section 1(c) of the Adoption Act of April 4, 1925, P. L. 127, amended August 26, 1953, P. L. 1411. Upon receipt of such report, this court directed that a complete investigation be made regarding the suitability of this placement by an officer of the Luzerne County Probation Department.

Section 301 of the Orphans' Court Act of August 10, 1951, P. L. 1163, provides:

"Exclusive Jurisdiction.—The orphans' court shall have exclusive jurisdiction of: . . .

"(8) Custody of Minors. The determination of the right to the custody of a minor in connection with *any* proceeding for his adoption or for the appointment of a guardian of his person". (Italics supplied)

Upon a petition of (C. M.), the natural mother, this court on February 24, 1967, ordered that a writ of habeas corpus issue, directed to (attorney) commanding him to bring before the court Baby Girl M. and to show cause why said Baby Girl M. should not be delivered to the permanent custody of her natural mother. (The natural mother sought the writ against (attorney) as the intermediary in this case, inasmuch as the identity of the persons with whom (attorney) placed the child was not disclosed to her until March 23, 1967, by (attorney's) testimony before the court.)

Although no formal petition for the adoption of this child has yet been filed, jurisdiction nonetheless is con-

ferred upon this court upon the making of a report of intent to adopt pursuant to the provisions of the Adoption Act. This, we hold, constitutes "any proceeding" for adoption as contemplated by section 301(8) of the Orphans' Court Act, and thereby vests in this court exclusive jurisdiction to determine the right to custody of Baby Girl M. In fact, adoptive petitioners are forestalled from the institution of adoption proceedings inasmuch as this child whom they seek to adopt has not resided with them for a period of six months, as required by section 4 of the Adoption Act,* a factor which also precludes them from establishing that said child has been abandoned by her natural mother. To require the natural mother to wait six months, or longer, until a petition for adoption is filed in order to have her right to custody of her child determined is unjust and prejudicial. It is conceivable that adoptive petitioners in similar circumstances, content with a status quo, would not file a petition for adoption in an attempt to frustrate the natural parent's efforts to regain a child.

The circumstances which led to the execution of the "Agreement" by the natural mother are, briefly, as follows:

Natural mother, on March 28, 1966, consulted (doctor), an obstetrician-gynecologist, who determined that she was pregnant. From this initial visit until approximately three or four weeks before the birth of the child, the natural mother held out to (doctor) that she was a married woman. Three or four weeks before the child's birth, however, she advised (doctor) that

---

\* Although the act requires only a six month period of residency by the child with petitioners, Luzerne County Orphans' Court Rule (16)1 provides that the person proposed to be adopted shall have resided with petitioner for a period of one year. Both the act and the court rule make exceptions in situations where such person is related by blood or marriage to petitioner.

she was unmarried and sought his advice and help in seeking placement of her child, yet unborn, for adoption.

(Doctor) testified that the natural mother at no time in the consideration of adoption placement for her child evidenced doubt or reluctance in what she was contemplating, but did state on cross examination that "the entire situation was very emotionally charged".

Whether the natural mother executed this agreement voluntarily or not is academic, because it is well settled that a natural parent's consent to an adoption may be withdrawn at any time prior to the entry of a final decree of adoption: Hunter Adoption Case, 421 Pa. 287; Gunther Adoption Case, 416 Pa. 237; Hildenbrand Appeal, 405 Pa. 579; Stone Adoption Case, 398 Pa. 190; Harvey Adoption Case, 375 Pa. 1.

The withdrawal or repudiation of a natural parent's consent to an adoption need not adhere to a formal written document evidencing such withdrawal. It may be manifest by persistent efforts to recover the child, and habeas corpus proceedings, as here brought by the natural mother, are sufficient evidence of her consent withdrawal. The record here shows that within a month after surrendering her child at the Wilkes-Barre General Hospital, natural mother recanted her decision and immediately made efforts to recover custody of her child. There is contained in the files of this court a copy of a letter dated December 21, 1966, from her attorney directed to (attorney), which states in part: "(Natural mother) has given serious consideration to the consent given by her, and has come to the unalterable conclusion that she desires to withdraw her consent, and that the custody of her daughter be returned to her at once". It was two months after this that natural mother instituted the habeas corpus proceedings because her demands had been refused.

It is apparent from the record, and we find as a matter of fact, that natural mother has effectively withdrawn her consent to the adoption of her child.

A natural mother has a presumptive right to the care and custody of her child, and the fact that others may be financially or socially better able to care for a child is not sufficiently compelling to separate children from their parents: Ashton Adoption Case, 374 Pa. 185.

Respondent in the present habeas corpus proceedings sought to establish the unfitness of natural mother to care for her child. Natural mother has never had custody of this child; nor, in fact, has she ever seen her child. The court should not speculate as to the environment into which this child may be reared.

Respondent also offered to show that adoptive petitioners are fit and suitable persons entitled to retain custody of this child. The court is satisfied from the initial report of investigation by the probation department that this child has been well cared for by adoptive petitioners and that they are suitable adoptive parents. Their qualifications, however, are not material in the light of these circumstances.

One result is made inescapable by these proceedings: that Baby Girl M. cannot be adopted by Mr. and Mrs. (adoptive petitioners). They have had custody of this child now for a period of almost five months, since the child was seven days old. It will no doubt be very difficult for them to sever this relationship with this child, and the court is not unsympathetic with their position. But on the other hand, it would be unnecessarily cruel to permit them to retain indefinite custody of this child and become even more closely attached to her while their tenuous right to such custody is the subject of prolonged legal proceedings.

In Hunter Adoption Case, 421 Pa. 287, facts similar to those in the present case were considered. There,

the Supreme Court reversed a decree of adoption and reversed an order refusing a petition by the natural mother for a writ of habeas corpus, *and in the same order* directed that custody of the child be delivered to the natural mother.

Now, therefore, (attorney) and adoptive petitioners are hereby ordered and directed to deliver Baby Girl M. into the custody of her natural mother.